IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CAMELLIA FEARS,

                    Plaintiff,

vs.                                    Case No. 15-1094-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff

supplemental security income payments.  The matter has been

fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 27, 2013, administrative law judge (ALJ) Jack D. McCarthy issued his decision (R. at 12-22). Plaintiff alleges that she had been disabled since May 1, 2007 (R. at 12). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the protective filing date,

4

November 2, 2011 (R. at 14).  At step two, the ALJ found that
plaintiff had a severe combination of impairments (R. at 14).
At step three, the ALJ determined that plaintiff's impairments
do not meet or equal a listed impairment (R. at 15).  After
determining plaintiff's RFC (R. at 17), the ALJ found at step
four that plaintiff could not perform past relevant work (R. at
20).  At step five, the ALJ found that plaintiff could perform
other jobs that exist in significant numbers in the national
economy (R. at 21).  Therefore, the ALJ concluded that plaintiff
was not disabled (R. at 22).

**III.  Did the ALJ err by refusing the request of plaintiff to**
**subpoena the treatment records of Ms. Hogan, plaintiff's**
**treating therapist?**

Ms. Jacqueline Hogan, a licensed clinical social worker,
was plaintiff's treating therapist from 2011-2013 (R. at 628,
762).  Ms. Hogan submitted two letters regarding plaintiff's
impairments and limitations, the first dated December 9, 2011
(R. at 628), and the second dated July 1, 2013 (R. at 762).  Ms.
Hogan also submitted a medical source statement-mental, dated
December 1, 2011 (R. at 624-625).  The record also contains
treatment records from Ms. Hogan from September-December 2011
(R. at 781-790).

On August 7, 2013, a hearing was held in this case before the ALJ.  At the hearing, plaintiff's counsel stated the following:

> …she's [plaintiff] been seeing Jacquelyn Hogan (phonetic) for about two and a half years.  She sees her every week.  And we've been having a lot of problems getting records from her.  She refuses to give us her treatment records.
>
> I know currently she's doing family therapy sessions, and so she did give us some family therapy ones that have her daughter's name on them, but they don't specifically say her name.  Ms. Fears' name.  So, we were unable to get those records, and so if possible, we would like for you to subpoena them, because she doesn't think we need treatment records, even though she did give those statements that we have in the record already.

(R. at 31-32).  In his decision, the ALJ held as follows:

> It is noted the claimant's representative, Ms. Greenfield, requested the undersigned to subpoena records from Ms. Hogan.  However, Ms. Greenfield furnished records from Ms. Hogan for 2011.  These records appeared to have little probative value.  In fact, Dr. England testified they were vague.  As noted above, a clinical social worker is not an "acceptable medical source per 20 CFR 404.1513(a).  A licensed clinical social worker is an "other source" 20 CFR 416.913(d).  The record has an abundance of notes from other treating and examining sources, including "acceptable medical sources."  It is not necessary to further delay reaching a decision in this case or to expend the Administration's resources to obtain additional records from Ms. Hogan.  Accordingly, her request is denied.

(R. at 20).

The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources."  SSR 06-03p, 2006 WL 2329939 at *1.  "Acceptable medical sources" include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 404.1513(a)(1)-(2);  20 C.F.R. § 404.1502.

A licensed clinical social worker is not an "acceptable medical source" under the regulations.  20 C.F.R. § 404.1513(a). However, evidence from "other medical sources," including a licensed clinical social worker, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an

"acceptable medical source," including the medical opinion of a treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.

The ALJ stated that the records from Ms. Hogan from 2011 had little probative value.  The ALJ noted the testimony at the hearing from Dr. England, a medical expert, who stated that the progress notes from Ms. Hogan "are very vague" and don't help, in terms of filling the gap regarding treatment prior to 2011 (R. at 54-55).  Ms. Hogan was the only treating source who offered an opinion regarding plaintiff's mental impairments and limitations.

In his decision, the ALJ noted the mental RFC assessment prepared by Ms. Hogan in December 2011, and stated that Ms. Hogan's own treating notes and the evidence as a whole do not support her assessment.  The ALJ further stated that Ms. Hogan's opinions are not well-supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with other substantial evidence in the record (R. at 19).  As noted above, the record did include plaintiff's treatment records from Ms. Hogan from September-December 2011 (R. at 781-788).

The ALJ did not specifically address the letters from Ms. Hogan, from December 9, 2011 and July 2, 2013.  In Ms. Hogan's letter dated July 2, 2013, she diagnosed post-traumatic stress disorder (PTSD), major depressive disorder, and generalized anxiety disorder (R. at 762).  Ms. Hogan's only diagnosis in her

8

December 9, 2011 letter was post-traumatic stress disorder (R. at 628). In his testimony, Dr. England noted the additional diagnoses by Ms. Hogan in her 2013 letter. Dr. England then went on to state that he did not have sufficient information in the record to confirm PTSD or generalized anxiety disorder as a diagnosis (R. at 60). Of course, Dr. England did not have any of Ms. Hogan's treatment records after 2011 because Ms. Hogan had refused to voluntarily provide them, and the ALJ refused to subpoena those records. The ALJ accorded "substantial weight" to the opinions of Dr. England (R. at 19).

> 42 U.S.C. § 423(d)(5)(B) states as follows:

>> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, **and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination**, prior to evaluating medical evidence obtained from any other source on a consultative basis.

(emphasis added). Although the claimant has the burden of providing medical evidence proving disability, the ALJ has a

basic duty of inquiry to fully and fairly develop the record as
to material issues.  This duty is especially strong in the case
of an unrepresented claimant.  The ALJ has a duty to develop the
record by obtaining pertinent, available medical records which
come to his attention during the course of the hearing.  Carter
v. Chater, 73 F.3d 1019, 1021, 1022 (10th Cir. 1996).

In the case of Madrid v. Barnhart, 447 F.3d 788, 790 (10th
Cir. 2006), the court set forth the applicable law regarding the
ALJ's duty to develop the record regarding medical evidence:

> "It is beyond dispute that the burden to
> prove disability in a social security case
> is on the claimant." Hawkins v. Chater, 113
> F.3d 1162, 1164 (10th Cir.1997); 20 C.F.R. §
> 404.1512(a) ( "[Y]ou must bring to our
> attention everything that shows that you are
> …disabled."). Nevertheless, because a social
> security disability hearing is a
> nonadversarial proceeding, the ALJ is
> "responsible in every case 'to ensure that
> an adequate record is developed during the
> disability hearing consistent with the
> issues raised.' " Hawkins, 113 F.3d at 1164
> (quoting Henrie v. United States Dep't of
> Health & Human Servs., 13 F.3d 359, 360-61
> (10th Cir.1993)); 20 C.F.R. § 404.944
> (requiring the ALJ to "look[ ] fully into
> the issues"). Generally, this means that the
> "ALJ has the duty to...obtain[ ] pertinent,
> available medical records which come to his
> attention during the course of the hearing."
> Carter v. Chater, 73 F.3d 1019, 1022 (10th
> Cir.1996). Moreover, the ALJ's "duty is
> heightened" when a claimant, like Mr.
> Madrid, appears before the ALJ without
> counsel. Henrie, 13 F.3d at 361; Musgrave v.
> Sullivan, 966 F.2d 1371, 1374 (10th
> Cir.1992) (same); see also Dixon v. Heckler,
> 811 F.2d 506, 510 (10th Cir.1987) ("The

> [ALJ's] duty of inquiry takes on special
> urgency when the claimant has little
> education and is unrepresented by
> counsel.").

In Madrid, the ALJ acknowledged that Mr. Madrid was referred for a rheumatology work-up and that a rheumatoid factor test was performed, but the ALJ apparently dismissed the possibility of a rheumatological disorder because the record contained no evidence of the results of a rheumatology work-up.  The court held that the ALJ committed legal error by not requesting the rheumatoid factor test results.  The court found that this failure was especially troubling because Mr. Madrid was not represented by counsel at the administrative hearing, the test results were in existence at the time of the hearing and apparently available, and the ALJ was aware the test was performed.  447 F.3d at 791.

In the case of Stidham v. Astrue, Case No. 09-2362-JWL, 2010 WL 3862030 (D. Kan. Sept. 27, 2010), the ALJ discounted the opinions of claimant's therapist because the diagnoses were not accompanied by contemporaneous treatment notes.  The court held that the facts of the case demonstrated that there were pertinent, available records which came to the ALJ's attention, but he failed to obtain them, and thereby erred (the mental health treatment notes were in existence at the time of the hearing and apparently available, but the ALJ did not attempt to

secure them).  2010 WL 3862030 at *3-4.  In the case of Maes v. Astrue, 522 F.3d 1093 (10th Cir. 2008), the claimant was represented by counsel.  Nonetheless, the court held that the ALJ had a duty to seek additional medical or treatment records to supplement or clarify the evidence concerning claimant's alleged mental impairment when the ALJ relied on a lack of evidence regarding diagnosis and treatment when determining that plaintiff was not disabled.  522 F.3d at 1097-1098.

In a case with very similar facts, Duncan v. Apfel, 156 F.3d 1243 (10th Cir. Aug. 26, 1998, unpublished), both plaintiff and her representative at the hearing told the ALJ that her main treating physician, Dr. Berger, refused to give her copies of all of her medical records.  The ALJ made no attempt to obtain the rest of Dr. Berger's notes, even though that evidence is obviously material to plaintiff's claim.  The court held that the ALJ should obtain the rest of Dr. Berger's records on remand.  Id. at *2.

In the case before the court, as in Duncan, plaintiff's counsel asked the ALJ to subpoena the additional treatment notes from Ms. Hogan after Ms. Hogan refused to voluntarily provide them to plaintiff.  The ALJ has the authority to issue a subpoena to obtain such records if necessary.  20 C.F.R. § 404.950(d); Baker v. Bowen, 886 F.2d 289, 292 (10th Cir. 1989).  The statute requires the ALJ to develop a complete medical

history of *at least* the preceding twelve months, and shall make
every reasonable effort to obtain from other treating health
care providers all medical evidence necessary to make a
determination of disability.

The ALJ issued his decision on November 27, 2013.  The
medical treatment records or notes from 2012-2013 from Ms.
Hogan, a treatment provider, should have been subpoenaed by the
ALJ after such a request was made by plaintiff's counsel after
Ms. Hogan refused to voluntarily provide them.  Dr. England,
whose opinions were given substantial weight by the ALJ, stated
that he did not have sufficient information in the record to
confirm some of the diagnoses of Ms. Hogan set out in her 2013
letter.  However, Dr. England did not have Ms. Hogan's treatment
notes from 2012-2013.  Furthermore, in discounting her opinions,
the ALJ stated that Ms. Hogan's treatment notes do not support
her assessment.  However, the ALJ only had the treatment notes
of 2011 before him.  Consideration of Ms. Hogan's opinions,
including those contained in her letter of July 1, 2013, require
the ALJ to obtain the treatment records or notes from 2012-2013.
Although it was noted that Ms. Hogan's treatment notes from 2011
were vague and of little probative value, the court and the ALJ
cannot speculate regarding the value of the treatment notes for
2012-2013.  As the case law makes clear, the ALJ has a duty to
obtain pertinent, available medical records which come to his

attention during the course of the hearing.  The treatment records or notes of Ms. Hogan from 2012-2013 were brought to the ALJ's attention during the hearing, and they are clearly pertinent and relevant to the issues in this case.  The ALJ clearly erred by failing to subpoena those records.

Plaintiff also alleges error by the ALJ in his evaluation of the opinions of Ms. Hogan.  The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after he attempts to obtain, and has an opportunity to review, the treatment records and notes from Ms. Hogan after 2011.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

## IV.  Did the ALJ err in his consideration of plaintiff's migraine headaches?

At step two, the ALJ found that the record did not establish that plaintiff's headaches were a severe impairment (R. at 15).  The ALJ noted that Dr. Hughey, a consultative physician, found no objective evidence of any functional impairment noted clinically because of migraine headaches (R. at 15, 717).  Dr. Winkler testified that he could not identify any examination findings that would lead to physical limitations (R. at 15, 70).

First, it is not reversible error if the ALJ fails to list all the severe impairments at step two.  In Brescia v. Astrue,

287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

Second, the ALJ noted in his decision that in making his RFC findings, he must consider all of plaintiff's impairments, including those determined to be "not severe" (R. at 13).  The ALJ later indicated that in making his RFC findings, he considered all symptoms and the extent to which these symptoms

can reasonably be accepted as consistent with the objective medical evidence, medical opinion evidence, and other evidence (R. at 17).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ relied on two medical opinions to find that plaintiff's headaches are not a severe impairment, and that this impairment does not result in any functional limitations. Plaintiff has not provided any medical evidence that her impairments result in functional limitations.  The court is

satisfied that the ALJ considered plaintiff's headaches when making his RFC findings.  The court will not reweigh the evidence.  The court finds that substantial evidence supports the ALJ's findings regarding plaintiff's headaches.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 15th day of April 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge